■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS VALENZUELA, Appellant. [653 NYS2d 96] —Judgment, Supreme Court, New York County (Alvin Schlesinger, J.), rendered May 19, 1993, convicting the defendant, after trial by jury, of murder in the second degree and criminal possession of a weapon in the second degree, and sentencing him to concurrent terms of 20 years to life and 5 to 15 years, respectively, unanimously affirmed.

A defendant has the right to be present at any material stage of the trial (*People v Velasco*, 77 NY2d 469). If an in camera conference, which took place after the threat made by defendant to the People's witness, was for the purpose of eliciting "the witness's version of the facts surrounding the alleged intimidation so that the court could determine its admissibility at trial" (*People v Turaine*, 78 NY2d 871, 872), then defendant's right to be present at a material stage of the trial would have been violated (*supra*). However, the facts at the trial indicate that the hearing held, both in its inception and result, was "wholly unrelated to the substantive legal or factual issues of the trial" (*People v Harris*, 76 NY2d 810, 812) and, therefore,

defendant's right to be present at every material stage of the trial was not violated (*People v Velasco, supra*).

The record shows that when the witness, a sentenced prisoner, showed up at the court, he refused to testify without speaking to his lawyer. The court appointed an attorney for the witness and allowed the attorney to confer with his new client in the witness room. After this conversation, the attorney for the witness asked for an in camera conference. The court initially refused such a conference but after calling in the reporter and the attorneys, *without the witness,* asked, "What has to be brought to my attention about whether a witness can be called?" The attorney for the witness then told the court that the witness told him that the defendant had threatened him coming to court in the bus that morning. The court interposed: "He will be asked about that when he testifies". The counsel for the witness told the court that he felt the court should know about the witness's fears and the Judge responded: "He will be separated and removed in the facility, today". Defendant's counsel told the court that he had spoken to his client who "volunteered to me that he had been brought over in the same bus. And I said, did you speak to him. He said not a word". After this, the attorney for the witness and the court engaged in a lengthy colloquy about the fears of the witness, and counsel asked for a delay of one day, which the court firmly refused, questioning its purpose and utility. However, after the prosecutor made certain representations about the number of witnesses left on the People's case, the court adjourned the matter until the following Monday. At the end of the informal "hearing," the following discussion took place:

"[Defense Counsel]: Judge, one thing. If on Monday, I just want to tell you, if they bring out the fact of the threat, just to protect the record, not to exacerbat(ed) *[sic]* the situation, I will ask for a mistrial, just for the record. That's all.

"[Prosecutor]: That is why I wanted to bring it to the Court's attention before the witness was called. I knew the argument would take place and it is good that the Court is making a ruling at this point.

"[The Court]: I didn't make a ruling yet on anything. (?) *[sic]*".

The foregoing demonstrates that defendant's presence at the "hearing" was not necessary. What was discussed for the most part was scheduling problems and the issue of whether the witness would or would not testify. At the outset, the reason for the in camera conference was the expressed fear of assigned counsel for the witness's safety. Counsel sought a short

adjournment so that alternative methods of protecting the witness and his family could be discussed with the prosecutor. The court repeatedly asked how an adjournment would achieve anything and even questioned the prosecutor on whether she would make a representation that the District Attorney would relocate the witness. Thus, the nature of the hearing was purely legal and ministerial which did not require the defendant's presence. In a similar case, this Court has held: "Defendant's right to be present at his trial was not violated. Though neither he nor his attorney were present when the court held a discussion with counsel for the sole eyewitness and the prosecutor, following the eyewitness's second day of testimony, that discussion was not a part of the trial. While, plainly, the eyewitness's credibility at the trial was an overriding consideration for conducting the conference, *the eyewitness's credibility was not tested at the conference.* Accordingly, and despite the fact that none of the parties to the conference shared defendant's interests, counsel's absence, and that of the defendant himself, bore no 'relation, reasonably substantial, to the fullness of [defendant's] opportunity to defend against the charge' (*Snyder v Massachusetts*, 291 US 97, 105-106). Defendant urges that the proceeding was about his efforts to influence a witness, but the conference was not held to determine whether the prosecutor could produce evidence of improper witness tampering (*see, People v Turaine*, 78 NY2d 871, 872); *rather it was held to determine what steps should be taken to insure the safety and production of the witness.*" (*People v Lovett*, 192 AD2d 326, *lv denied* 82 NY2d 722 [emphasis added].)

We have also found that a hearing outside the presence of the defendant *and* his counsel relating solely to the scope of defendant's telephone privileges—following a threat to one of the prosecution witnesses—did not affect that defendant's opportunity to defend himself against the charge. We said: "Insofar as the same witness gave testimony at trial concerning the menacing telephone call, we note the defendant had an opportunity to hear all the jury heard and to cross-examine the threatened witness [citation omitted]" (*People v Blair*, 173 AD2d 172, *lv denied* 78 NY2d 962, 1009).

Likewise, the record is clear in the instant case that the conference was not held to determine the credibility, etc. of the witness regarding the threats but rather "to insure the safety and production of the witness" (*People v Lovett, supra*, at 326). That the court did *not* conduct the conference to determine the admissibility of any "threats" was made abundantly clear af-

ter the prosecutor stated that it "is good" that the court was "making a ruling at this point" and the court emphatically repudiated her by stating, "I didn't make a ruling yet on anything". Further, none of the counsel present urged the Judge to take testimony from the witness (or defendant), make credibility findings or take any other action that might have rendered defendant's presence necessary.

Even assuming arguendo that defendant's presence was necessary, his counsel was present and interposed defendant's flat denial of any exchange at all with the witness. Defendant's presence therefore would have been " 'superfluous' " and would not have affected the outcome of the conference in any way (*see, People v Favor*, 82 NY2d 254, 268, quoting *People v Dokes*, 79 NY2d 656, 662).

In any event, when the witness took the stand in front of the jury and was asked about the threat, he testified simply that defendant "told me just, that I shouldn't come here. And that was it". Trial counsel did not even cross-examine the witness on the topic, nor did he seek any instructions as to it, nor did he address it in his summation. This is not surprising in view of the fact that defendant's guilt of murder was overwhelmingly established by the testimony of four eyewitnesses, two of whom actually saw defendant shoot the victim. Defendant unequivocally admitted his culpability to the police which also corroborated the testimony of these eyewitnesses. Concur—Rosenberger, J. P., Kupferman, Nardelli, Tom and Mazzarelli, JJ.